UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA, :
: **MEMORANDUM AND ORDER**
-against- : 06-cr-255 (DLI)
:
SHAHEED KHAN, :
:
Defendant. :
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Before the court is a motion by Defendant Shaheed Khan ("Defendant" or "Khan") requesting, pursuant to 28 U.S.C. § 455(a), to disqualify the court. For the reasons described below, Defendant's motion is denied.

**I.   Background**

Khan is a Guyanese national charged with multiple counts of distribution, importation, and possession of cocaine and engaging as a principal administrator, organizer, and leader of a continuing criminal enterprise in the Eastern District of New York and elsewhere. Khan was charged by indictment on April 13, 2006 and by superseding indictment on February 23, 2007. His arraignment was held on June 30, 2006 before United States Magistrate Judge Roanne L. Mann. Khan first appeared before this judge for a status conference held on August 4, 2006. To date, proceedings before the court have involved pretrial, collateral matters, including a bail application,[1] prison condition matters, possible conflict and recusal issues, and a violation of Eastern District of New York Local Criminal Rule 23.1 ("Rule 23.1").

---

[1] Defendant appealed from the court's denial of bail. The Second Circuit summarily affirmed this court's decision. *See United States v. Khan*, 07-0243-cr, 2007 WL 1098415 (2d Cir. Apr. 5, 2007).

1

### A. Attorney Withdrawal Order

At a status conference held on May 21, 2007, attorney Telesforo Del Valle ("Del Valle") appeared for the first time on behalf of Defendant. The court informed the parties that Del Valle was on its conflict list, as the court is godmother to his youngest child and has a close relationship with his family. Simels stated that he would remain as lead counsel, that Del Valle would not be replacing either of the two existing defense attorneys but would serve as additional counsel, along with one, possibly two other attorneys also joining the defense. The court gave the parties three days, until May 24, 2007 when a status conference would be held, to consider whether they would waive the conflict ("May 24 conference").

At the May 24 conference, the court informed the parties that, upon conducting its own research and further reflection on the matter, it had determined that the appropriate course of action under the law was to address the conflict issue on its own, without input from the parties. *See United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989) ("We hold that, as a general rule, a federal judge should reach his own determination [on recusal], without calling upon counsel to express their views . . . . The too frequent practice of advising counsel of a possible conflict, and asking counsel to indicate their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable.") (internal quotation marks and citation omitted). Relying on binding Second Circuit precedent, the court directed Del Valle to withdraw as counsel. *See In re FCC*, 208 F.3d 137, 139 (2d Cir. 2000) ("As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay.")

## B. Rule 23.1 Order

On June 13, 2007, plaintiff United States of America (the "Government") submitted a letter to the court, informing the court of an alleged violation of Rule 23.1 by defense counsel Robert Simels ("Simels"). Specifically, the Government charged Simels with identifying potential Government witnesses against Khan to the Guyanese press, thereby jeopardizing the safety of these individuals, as well as their friends and family. In addition, the Government alleged that Simels further violated Rule 23.1 by making statements in an attempt to publicly smear the identified individuals and by commenting on the merits of the case, the Government's motives, and the evidence in the case. The Government thus requested an order, pursuant to Rule 23.1(h), prohibiting Defendant's attorneys from making statements to the press in violation of Rule 23.1. In support of its request, the Government submitted a compact disc recording of a press conference Simels held before the Guyanese press on April 25, 2007 (the "press conference"), as well as a redacted and unredacted transcript of the recording, and Internet news articles reporting on Simels' comments at the press conference.

Simels submitted a response letter on June 19, 2007, opposing the Government's request. In his letter, Simels denied that he intended to violate Rule 23.1, asserting that the jury pool for this case could not have been tainted by statements made to the local press in Guyana and that the individuals whose names he had mentioned were independently known to the Guyanese press.

On July 13, 2007, the court held a hearing on the matter. At the hearing, the court imposed a gag order, stating that a written order would follow. On July 19, 2007, the court issued a Memorandum and Order ("July 19 Order"), finding that Simels' statements to the Guyanese press likely put numerous people and their families and friends in danger, thereby violating Rule 23.1's

prohibition against the release of information or opinion reasonably likely to interfere with the due administration of justice. In addition, the court noted that it was conceivable for statements made to the local press in Guyana to taint the prospective jury pool in New York City. In considering the Government's motion, the court visited the Internet and ran a "Google" search for Defendant's name. The purpose of the "Google" search was to help assess whether Simels' comments made to the local press in Guyana could taint the jury pool here in New York City via the Internet.[2] The court found that they could, and the court further found that Simels' own statements reflected that he was attempting to "educate" potential jury members. However, the court declined to address whether it was reasonably likely that Simels' comments actually interfered with a fair trial in light of the fact that a trial date had not yet been set.

The court then issued a prohibition enjoining all counsel of record from making statements to the press in violation of Rule 23.1.[3] In addition, the court put all counsel on notice that any violation of the court's prohibition or of Rule 23.1 would result in a finding of contempt, the imposition of sanctions, and/or possible action by this court's grievance committee.[4]

Finally, in response to a press member's comment at the press conference that Simels' Internet web site contained misleading information, the court visited the web site. As a result of

---

[2]It is important to note that by visiting the Internet, the court was not gleaning information from the Internet, but rather evaluating the question at issue concerning whether statements made to the local press in Guyana could possibly reach and taint the prospective local jury pool, whether by Internet, print, or otherwise.

[3]The court's prohibition went slightly beyond Rule 23.1, as described in the July 19 Order.

[4]While the facts and circumstances of Simels' violation of Rule 23.1 would have justified the imposition of sanctions and/or discipline, the court nevertheless elected not to do so.

what it observed on Simels' site, the court, in its July 19 Order, cautioned Simels to ensure that the content of his web site adheres to New York's Disciplinary Rules and Ethical Considerations, as well as the professional conduct rules of other states.

## II. Discussion

### A. Recusal Standard

Section 455(a) of title 28 of the United States Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Second Circuit has stated that, in evaluating a motion for recusal, the court must ask the following question: "[w]ould a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Lovaglia*, 486 F.3d 764, 775 (2d Cir. 2007) (internal citations omitted).

### B. Defendant's Grounds for Recusal

Defendant sets forth a number of grounds that he contends, either individually or cumulatively, indicate that the court's impartiality may reasonably be questioned, thereby requiring the court to recuse itself from presiding over the instant action. The court finds that the alleged grounds are insufficient to reasonably challenge the court's impartiality. Each ground is considered in turn.

#### 1. Attorney Withdrawal Order

Defendant alleges that, prior to Del Valle's appearance before this court at the May 21, 2007

5

status conference, Del Valle held an *ex parte* conversation with the court,[5] during which the court allegedly advised him that "there was no problem in [his] entry into the case, that she would simply recuse herself based upon [his] entry into the case, and ask that the case be re-assigned." (*See* Del Valle Aff. ¶ 9.) According to Defendant, the court, in issuing its order directing Del Valle to withdraw, brought its impartiality into question because it allegedly suggested that Simels had, according to Defendant, "improperly schemed to seek the Court's removal from the case by having Mr. Del Valle appear as co-counsel" and because the court allegedly implied that it had not conferred with Del Valle on the recusal matter. (Def.'s Mem. 12.)

The court finds Defendant's charges here without merit. In its order directing Del Valle to withdraw, the court expressly declined to pass judgment on defense counsel's motives. As Defendant quoted in his own papers, the court stated that it "was not going to pass judgment on the motives for adding counsel" and that the situation involved "a public policy issue" concerning, "*whether wittingly or unwittingly*, [] Mr. del Valle may be sought to be added to a case for the sole purpose of causing recusal of this Judge from a pending case and for the sole purpose of [forum] shopping." (5/24/07 Tr. 11, emphasis added.) Moreover, the court's statements were not, as Defendant asserts, directed solely at Simels, but rather at all present and proposed defense counsel, as well as Defendant. Most importantly, however, the aim of the court's remarks were not to attach fault, but rather to emphasize that it could not, as a policy matter, automatically recuse itself because of the appearance of Del Valle in this or any other case. Such a practice would only serve to

---

[5]Del Valle alleges in his affidavit that he advised Simels of the conflict, and rather than declining to enter the case or addressing the issue in the first instance before the court with all parties present, Del Valle states that he and Simels agreed to initiate an *ex parte* conversation with the court.

encourage parties to retain certain counsel in order to achieve the court's recusal, a practice that would fly in the face of the orderly and fair administration of justice.

Furthermore, regarding the court's alleged *ex parte* agreement with Del Valle to recuse itself in this case,[6] Defendant does not point to any statement made by the court conveying, as Defendant alleges, "the impression that there had been no prior exploration of the [recusal] issue." (Def.'s Mem. 12.) Defendant merely highlights the following remark made by the court: "whether or not other counsel were aware of Mr. [D]el Valle's relationship, certainly it was his obligation to apprise counsel [of the conflict] and certainly there is an obligation for counsel to ensure [] that he or she is not used for that purpose and to refrain from creating a situation where that might require recusal."[7] (5/24/07 Tr. 12.)

Del Valle certainly had an ethical obligation to inform other counsel of the conflict and a further obligation to decline to represent Defendant in light of the conflict. The court's foregoing statement implied no more than this. In any event, defense counsel did not raise any objection to the statement at the time of the May 24 conference in order to correct any perceived factual error or misrepresentation, and instead waited three months to voice the instant objection. Defendant's belated challenge can hardly be viewed as a reasonable basis on which to question the court's impartiality, given his three-month-long silence on the issue and given the fact that nothing in the

---

[6]While the court does not concur with Del Valle's version of the facts, it does not view this Memorandum and Order to be the proper forum to address the veracity of Del Valle's statements. In any event, any passing reference to a subject, such as the one at issue, during a brief social telephone conversation would not be binding on the court or dispositive of the issue.

[7]It should be noted that at no time during either of the two proceedings addressing this issue did Del Valle or Simels raise the alleged telephone conversation in their arguments for recusal.

court's challenged statement readily supports defense counsel's proposed interpretation of it.

Accordingly, the court finds that its statements made at the May 24 conference raise no reasonable suggestion that its impartiality may be questioned.

### 2. Rule 23.1 Order

Defendant raises objections to certain statements in the court's July 19 Order finding Simels in violation of Rule 23.1, and prohibiting all counsel from making statements to the press in violation of Rule 23.1. In the July 19 Order, the court stated that "Defendant *allegedly* headed a powerful cocaine trafficking organization" and was "*charged* with leading a major violent drug organization out of Guyana." (July 19 Order 1, 6, emphasis added.) According to Defendant, because the indictment does not allege that the formal charges involved violence, these statements "support[] a reasonable inference that the Court has either pre-judged Khan without any basis in fact or, alternately, that the Court has gathered facts about Khan and the charges from an extrajudicial source, *e.g.*, from its 'Google' search of Khan's name." (Def.'s Mem. 11.)

The court finds Defendant's contentions meritless. The court's complained-of statements clearly reflect that they were merely based on allegations[8] made by the Government. The indictment formally charges Defendant with being the principal administrator, organizer, and leader of a continuing criminal enterprise that trafficked in over 150 kilograms of cocaine. Moreover, the Government has alleged that Defendant led a violent drug organization. (July 13, 2007 Hearing Tr. 23.) Defendant's contention that the court may have garnered information about Defendant from

---

[8]To the extent that Defendant's objection concerns the word "charged," which the court used in one of its challenged statements, it is clear that the court did not use the word "charged" in the sense of formal charges listed in the indictment, as there can be no mistake that the indictment does not employ the court's challenged language. Rather, the court's use of the term "charged" was in the sense of allegation.

the Internet is, apart from being incorrect, mere speculation that cannot raise a reasonable challenge to the court's impartiality.

Defendant next argues that the court demonstrated its bias by allegedly misconstruing Simels' statements at the press conference regarding his claimed attempts to "educate" a potential jury about the case. According to Defendant, Simels' statements at the press conference do not support the court's interpretation that he was attempting to influence the prospective jury pool, and Defendant instead offers an alternate interpretation. Although Defendant prefers his own interpretation over the court's, this fact does not serve to demonstrate the court's bias. *See United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) ("[J]udicial rulings and the opinions formed by judges on the basis of facts introduced in the course of proceedings almost never constitute a valid basis for a bias or partiality motion . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (internal quotation marks and citation omitted). The proper mode for Defendant to challenge any of the court's findings of fact or determinations of law is to take the issue up on appeal.

The next of Defendant's objections is that "[t]he Court . . . indicated that Mr. Simels engaged in the worst sort of obstruction of justice: making statements in Guyana with the *purpose* of attempting to silence, intimidate, harass and 'put in danger' identified individuals, their families and friends." (Def.'s Mem. 12-13, emphasis in original.) Defendant's objection here strikes at the very heart of the court's holding in its July 19 Order. Indeed, the court found that "Simels' statements appear[ed] to serve no purpose other than to attempt to silence, intimidate, and harass the identified individuals and to put them and their families and friends, many of whom live in Guyana or within Guyanese communities in the United States, in danger." (July 19 Order 6-7.) The court proceeded

9

to hold that "Simels' statements [] jeopardized the safety of the individuals he named, as well as the safety of their friends and families" and, further, that the court could "think of no other conduct that would more fully interfere with the due administration of justice, within the meaning of Rule 23.1." In essence, Defendant's challenge here is, in fact, an objection to the court's holding in its July 19 Order, and is insufficient to demonstrate any reasonable basis to question the court's impartiality. *See Yousef*, 327 F.3d at 170. Again, Defendant's recourse is to take his objection up on appeal.

Finally, Defendant complains that the court visited Simels' Internet web site and, in its July 19 Order, admonished Simels to adhere to the applicable ethical rules governing attorney advertisements. Defendant charges the court with improperly acting as "knight-errant" in examining Simels' web site. However, Defendant fails to mention that it was a Guyanese press member who, through his statements at the press conference, alerted the court of potentially misleading advertising on Simels' web site related to this and other cases. Upon learning of the potential ethical violation, the court was obligated to follow up on the press member's allegations. *See* Codes of Conduct for United States Judges Canon ("Codes") 3B(3) ("A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer."); Codes Canon 1 ("A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved.") Thus the court's visit to Simels' web site does not support Defendant's contention of bias.

### 3. Other Alleged Ground

In connection with the Government's Rule 23.1 motion, the court held a hearing on the matter on July 13, 2007. Defendant, in his current submission, relates an interchange between the

10

court and Simels that occurred at the hearing regarding a digital video disc ("DVD") allegedly containing a video of the press conference. (*See* July 13, 2007 Hearing Tr. 11-13.) According to Simels, the DVD showed that he was not accompanied by Khan's bodyguards at the press conference, as was stated in one of the articles the Government brought to the court's attention, and mentioned in the Government's papers. However, the DVD was never submitted to the court.

It is unclear whether and how Defendant proposes that this interchange reflects the court's bias, as he does not address it in his discussion. The only reference Defendant makes to this incident in his discussion is a sole statement that "[t]he Court has also strongly suggested that Khan's principal attorney, Mr. Simels, regularly engages in underhanded tactics, gamesmanship and worse." (Def.'s Mem. 11-12.) This appears to be a reference to the fact that the court commented, during the DVD interchange, "I don't like gamesmanship." The court is not aware of any reason that this remark would reflect bias, and Defendant's papers offer no assistance in this regard. The court will not speculate on this point, and, thus, Defendant has raised no reasonable challenge to the court's impartiality here.

**III. Conclusion**

The court, having considered the foregoing facts and arguments individually and cumulatively, finds that its ability to be impartial in the instant action has not reasonably been called into question. Indeed, the court has no reservation whatsoever that it can continue to preside over this matter in a fair and impartial manner. Accordingly, the court denies Defendant's motion seeking to disqualify this judge from presiding over the instant action.

SO ORDERED.

DATED: Brooklyn, New York
     October 30, 2007

                _____/s/_____
                DORA L. IRIZARRY
                United States District Judge