UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
UNITED STATES OF AMERICA, :
: **MEMORANDUM AND ORDER**
-against- : 06-cr-255 (DLI)
:
SHAHEED KHAN, :
:
Defendant. :
------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Before the court is the government's motion for an anonymous and partially sequestered jury. The government contends, for several reasons, that these protective measures are necessary to insure an impartial verdict and to protect the jurors. Specifically, the government seeks an order requiring that (i) the names, addresses and workplaces of members of both the *venire* and *petit* juries not be revealed, and (ii) the jurors eat lunch together and be accompanied to and from the courthouse each day by the United States Marshals Service (the "USMS"). Defendant Shaheed Khan ("Defendant") opposes the government's request, contending that (i) an anonymous jury is unnecessary as the government failed to establish that jurors need protection, and (ii) these measures, in particular the partial sequestering of jurors, will have an unduly prejudicial effect on the Defendant.[1] Additionally, Defendant seeks a hearing on the validity of the government's

---

[1] By way of a footnote, Defendant notes that the Supreme Court "has never decided the constitutionality of empaneling an anonymous and/or a partially sequestered jury" and challenges this procedure as violating his various Fifth and Sixth Amendment rights. Def. Opp. 10 n.3. Defendant provided no legal theories in support of this cursory argument. The Second Circuit has rejected constitutional challenges to the use of anonymous and partially sequestered juries "when genuinely called for" and "properly used." *United States v. Vario*, 943 F.2d 239 (2d Cir. 1991). This court is bound by Second Circuit precedent and will evaluate the instant motion as to whether it complies with that precedent.

1

evidence. As set forth more fully below, the court finds that impaneling an anonymous and partially sequestered jury is necessary to protect the interests of the public and the jurors, and that doing so will not prejudice the Defendant's rights or interests in conducting a meaningful *voir dire* or in maintaining the presumption of innocence. The government's motion is granted in its entirety and Defendant's request for an evidentiary hearing is denied.

**I.      Legal Standards**

In resolving motions for anonymous and partially sequestered juries, courts must balance "the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence, against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) (holding that the district court did not abuse its discretion in impaneling an anonymous jury). It is well settled in the Second Circuit that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights"; however, analysis of the potential constitutional impact of an anonymous jury on a defendant "must receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense." *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991). It is appropriate to impanel an anonymous jury when (i) there is "strong reason to believe that the jury needs protection" and (ii) reasonable precaution is taken "to minimize the effect that such a decision might have on the jurors' opinions of the defendants." *Id.*; *accord United States v. Gammarano*, No. 06-CR-0072 (CPS), 2007 WL 2077735, *4 (E.D.N.Y. July 18, 2007) ("Anonymous juries are empaneled in order to protect jurors from harm, to address concerns of jurors regarding their safety, and to prevent potential jury tampering.").

2

There are several factors the court must weigh in determining whether to impanel an anonymous jury. There is "strong reason" to believe jurors need protection when the government demonstrates "a defendant's willingness to tamper with the judicial process." *Quinones*, 511 F.3d at 296. Evidence of threats made to witnesses, informants or jurors in current or prior cases demonstrates a willingness on the part of the defendant to tamper with the judicial process. The murder of a cooperating witness is particularly harmful to the judicial process as it (i) eliminates "a witness who could have provided incriminating evidence against the defendant," and (ii) sends "a powerfully frightening message to others of the terrible consequences awaiting anyone who cooperated in the defendants' prosecution." *Id*. at 295-96. In addition to the willingness to tamper, courts in this circuit have considered several other factors: (i) the dangerousness of the defendant, demonstrated by the seriousness of the crimes charged, including whether the defendant is charged with participating in a large-scale enterprise; (ii) the defendant's ability to interfere with or intimidate the jury, and (iii) the anticipated media coverage during trial. *See United States v. Wilson*, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006); *accord Gammarano*, 2007 WL 2077735, at *4. It is unclear whether any of these factors individually justify impaneling an anonymous jury; however, there are numerous cases indicating that anonymity is appropriate when some combination of these factors is present. *See, e.g.*, *Quinones*, 511 F.3d at 296 (stating that "the seriousness of the crime and the likelihood of pre-trial publicity [] reinforce[d] the district court's decision to empanel an anonymous jury").

Upon finding that impaneling an anonymous jury is warranted, courts must undertake certain precautions to insure that the "defendant's fundamental rights [are] protected." *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994). To protect the defendant's rights, courts must (i) conduct

*voir dire* in a manner "designed to uncover bias as to issues in the cases and as to the defendant," and (ii) provide the jurors with a "plausible and nonprejudicial reason for not disclosing their identities or for taking other security measures." *Id*.

## II. Discussion

The government contends that impaneling an anonymous and partially sequestered jury is necessary to insure the public's interest in an impartial verdict and to protect prospective jurors. In support of its motion, the government submitted an affirmation of Marina Vides, Special Agent, Immigration and Customs Enforcement ("Vides Affirmation") and copies of various articles published on this case. Additionally, the government submitted an *ex parte* affirmation of Ms. Vides ("Vides Ex Parte Affirmation").[2]

Defendant is a Guyanese national charged in an eighteen-count indictment with distribution, importation, and possession of cocaine and engaging as a principal administrator, organizer, and leader of a continuing criminal enterprise in the Eastern District of New York and elsewhere. Defendant allegedly headed a powerful, violent, cocaine trafficking organization out of Georgetown, Guyana. Defendant faces a maximum sentence of life imprisonment if convicted.

The Second Circuit has cautioned courts to refrain from impaneling anonymous juries simply because the defendant is a member of a criminal organization. Indeed, invocation of the words "organized crime," "mob" or "Mafia" without allegations of "something more" fails to support impaneling an anonymous jury. *See Vario*, 943 F.2d at 241. In this case, however, there is substantial evidence of "something more." First, there is evidence of Defendant's willingness to

---

[2] The government's motion and defendant's response were all filed under seal at the request of the parties; however, the court finds no basis for filing this decision under seal.

tamper with the judicial process. Defendant has admitted that, in 1993, he successfully evaded federal prosecution in Vermont for possession of a firearm by a convicted felon by absconding to Guyana while released on bail. *See* Def. Mot. to Dismiss (Docket Entry No. 3) at ¶ 5-6.[3] According to the government's confidential sources, Defendant will not hesitate to order the killing of anyone he believes is aiding the government in its investigation and prosecution of him and his alleged criminal organization. *See* Gov't Mem. at 5-6. Indeed, government witnesses and confidential sources have informed the government that defendant ordered the murder of one of his alleged narcotics associates, whom he believed to be cooperating with the government. *Id.* Notably, it was necessary for the court to issue an order prohibiting Defendant's attorneys from making statements to the press to protect cooperating witnesses. *See* Docket Entry No. 61, Order dated July 19, 2007 ("July 19 Gag Order"). The court incorporates by reference its findings contained in the July 19 Gag Order, indicating concerns of retribution facing cooperating witnesses. For all of the reasons that were necessary to protect cooperating witnesses, it is necessary to protect prospective jurors. Finally, the Vides Ex Parte Affirmation, on its own, provides significant evidence of Defendant's willingness to tamper with the judicial process.

It is within the context of these alleged facts that the court finds that Defendant's willingness to threaten or merely to bribe just one juror—all that is required to interfere with this prosecution—is not beyond imagination. Defendant's contention that the government cannot rely on conduct occurring outside of the United States (*see* Def. Opp. 17-78) is misplaced. The relevant inquiry is the *willingness* to tamper, not the location of the tampering. The location of tampering

---

[3] Indeed, the government advised the court at the bail application hearing held on January 16, 2007, that there was an outstanding arrest warrant for Defendant due to his failure to appear in the Vermont case, and it has been lodged with the USMS as a detainer.

is relevant, if at all, to the Defendant's ability to tamper. The Vides Ex Parte Affirmation and Defendant's evasion of the 1993 Vermont prosecution indicate the Defendant's ability to tamper with the judicial process within the United States. On these grounds, the court finds that impaneling an anonymous and partially sequestered jury is necessary.

An analysis of the remaining factors further justifies the need for an anonymous jury. It is further alleged by the government that Defendant is dangerous, a fact worth consideration. According to one of the government's confidential sources, Defendant, through his "Phantom Squad," is responsible for "at least 200 extra-judicial killings from 2002 to 2006" in Guyana. Gov't Mem. at 4. Defendant is not charged with crimes considered to be *per se* violent in nature; however, involvement with and leadership of a criminal organization indicates Defendant's propensity for violence. *See Wilson*, 493 F. Supp. 2d at 400 (finding that "Defendant's criminal history and his participation in a large scale criminal enterprise without question show that he is dangerous and weigh heavily in favor of using an anonymous, partially-sequestered jury . . ."). Further, it is unrealistic to assume that jurors will be sanitized from evidence of Defendant's dangerousness at trial. Additionally before the court, is the government's 404(b) motion, indicating the government's interest in presenting this evidence to the jurors. The court expresses no opinion as to the merits of the government's 404(b) motion at this time; however, to the extent that evidence of Defendant's dangerousness is presented at trial, juror intimidation is possible. Further, Defendant's contention that the government relies improperly on inaccurate Guyanese news sources (*see* Def. Opp. at 3-5) lacks merit. The government relied on more than just these articles in support of its allegations of Defendant's dangerousness. *See* Vides Aff., Vides Ex Parte Aff. An anonymous and partially sequestered jury is necessary to minimize juror intimidation.

Finally, the potential for juror intimidation by the anticipated media coverage of the trial supports impaneling an anonymous and partially sequestered jury. Defendant admits that, at the inception of this case, it "generated a substantial amount of publicity in Guyana." Def. Mot. to Dismiss (Doc. No. 3) at ¶ 12. That interest, as Defendant recently noted, continues to the present day. *See* April 28, 2008 Conf. Tr. at 25:16-20 (noting that, upon the government's filing of its April 24, 2008 letter, "the next day in the Stabroek News in Guyana it was a front page story"). In fact, the Guyanese press reports on most developments as they occur in this case. *See generally* Gov't Mem., Ex. B. Based on the nature of the coverage to date, the court finds that there is a substantial likelihood that the names, addresses, and workplaces of the jurors would be reported immediately. Defendant's contention that jurors are not effected by media sources disseminating news outside of the district lacks merit. Consistent media coverage, even if minimal, provides support for anonymity as coverage enhances "the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." *Vario*, 943 F.2d at 240. Any information published online in Guyana is available in the United States and elsewhere. Moreover, this concern is amplified by the fact that this district is home to the largest Guyanese population living outside of Guyana. It is unreasonable to assume that this case is not followed locally by members of our Guyanese community. Further, local sources have covered this case. *See* April 28, 2008 Conf. Tr. at 26:3-7 (noting that the Daily News "often sits in on . . . status conferences").[4]

---

[4] The court refers the parties to its discussion of the media coverage of this case, in print and over the internet, and of its reach internationally to communities within the Eastern District of New York, as set forth in the July 19 Gag Order, previously incorporated herein.

The court is mindful of its duty to protect Defendant's constitutional rights, particularly, Defendant's interest in preserving and safeguarding the presumption of innocence and meaningful *voir dire*. *See Thai*, 29 F.3d at 801 (expressing approval for the use of detailed juror questionnaires approved by the parties and the articulation of neutral reasons for anonymity). To preserve the presumption of innocence, the court will provide prospective jurors with a neutral explanation of the reason for their anonymity and partial sequestration. To insure meaningful *voir dire*, the court will (i) require prospective jurors to complete an extensive questionnaire, developed in consultation with the government and defense attorneys, (ii) question each juror in person and in an individually sequestered setting, after consultation with counsel, to uncover any potential bias, and (iii) inform the parties of all relevant information concerning each potential juror. *See Wilson*, 493 F. Supp. 2d at 401 (setting forth precautions to "minimize any potential prejudice").

Finally, the court concludes that there is no need for an evidentiary hearing on the government's allegations. *See United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (affirming the the impaneling of an anonymous jury without an evidentiary hearing into the allegations contained in the government's proffers). The decision to impanel an anonymous and partially sequestered jury is based on sufficient evidence: Defendant's admissions, prior factual findings of the court, and the submissions of the parties, including the Vides Ex Parte Affirmation.

## CONCLUSION

For the reasons set forth above, the government's motion for an anonymous and partially sequestered jury is granted. The names, addresses and workplaces of members of both the *venire* and *petit* juries will not be revealed during the trial and the jurors will eat lunch together and be accompanied to and from the courthouse each day by the USMS. Defendant's request for an evidentiary hearing is denied.

SO ORDERED

DATED:　　Brooklyn, New York
　　　　　　May 13, 2008

　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　United States District Judge