UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
UNITED STATES OF AMERICA,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　-against-　　　　　　　　　　　:　　06-cr-255 (DLI)
　　　　　　　　　　　　　　　　　　　　　:
SHAHEED KHAN,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendant.　　　　　　　:
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

　　　　Defendant is charged in an eighteen-count indictment with distribution, importation, and possession of cocaine and engaging as a principal administrator, organizer, and leader of a continuing criminal enterprise in the Eastern District of New York and elsewhere. Defendant allegedly headed a powerful, violent, cocaine trafficking organization out of Georgetown, Guyana. Defendant faces a maximum sentence of life imprisonment if convicted.[1]

　　　　On March 31, 2008, and April 28, 2008, the court authorized the issuance of *ex parte* subpoenas upon defendant's request, pursuant to Rule 17 of the Federal Rules of Criminal Procedure. Before the court is the government's motion to quash certain subpoenas at the behest of various government agencies, employees, and two non-party, non-governmental entities. Defendant opposes the instant motion in its entirety. The subpoenas at issue seek documents, reports, including medical records, communications, recordings, and other tangible and intangible material from several government agencies and employees, as well as non-party, non–governmental entities.

---

[1] The court has issued several decisions on motions made by the parties wherein the facts of this case have been discussed in greater detail. Therefore, familiarity with the facts is assumed and only those facts necessary for the resolution of the instant motion shall be set forth herein.

1

Additionally, the subpoenas seek testimony from several government agents and employees. For the reasons set forth below, the government's motion to quash is granted in part and denied in part.

## DISCUSSION

**I.    Legal Standards**

Defendants may seek the pre-trial production and inspection of certain materials by subpoena as set forth in Rule 17 of the Federal Rules of Criminal Procedure; however, such subpoenas are not "intended to provide a means of discovery for criminal cases." *See United States v. Nixon*, 418 U.S. 683, 698 (1974). Rule 17 does not broaden the limited discovery available in criminal cases; rather, the purpose of Rule 17 is to avoid unnecessary delay at trial by providing a mechanism for pre-trial production and inspection of certain material. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Defendants may not seek material under Rule 17 that they are prohibited from obtaining under Rule 16. *See, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (noting that Rule 17 subpoenas cannot be used to "undercut[] the strict limitation of discovery" found in Rule 16). Additionally, courts should quash or modify subpoenas when compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

This otherwise vague standard has been interpreted as requiring the proponent of a subpoena to demonstrate that: (i) the material sought is "evidentiary and relevant," (ii) the material sought is "not otherwise procurable reasonably in advance of trial by exercise of due diligence," (iii) "the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," and (iv) "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700; *accord Bowman Dairy*, 341 U.S. at 219-22. Essentially, the *Nixon* standard

requires a showing of relevance, admissibility, and specificity. *See Nixon*, 418 U.S. at 701.

This strict standard is applicable both to subpoenas of government agencies and employees as well as those of non-party, non-governmental entities and individuals. *See United States v. Ferguson*, 06-CV-137 (CFD), 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007) (discussing the requirements of subpoenas). In dicta, the Supreme Court indicated that a lower standard might be appropriate for cases involving subpoenas issued to non-parties, but did not decide whether such a lower standard exists. *See Nixon*, 418 U.S. at 701 n.12. One court in this circuit noted that criminal discovery rules are inapplicable to non-parties and, as such, "[a] real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet [the *Nixon*] standard." *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000). Instead, that court indicated that the resolution of challenges to subpoenas issued by defendants to non-parties should be limited to whether the subpoena at issue is "reasonable" and not "unduly repressive." *See id*. at 563 (quashing the subpoenas at issue as they failed to meet either the *Nixon* or the advocated, more relaxed standard). In a more recent opinion, the same judge expressly held that the lower evidentiary standard governs. *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (holding that subpoenas issued by defendants to non-parties should be enforced if "reasonable, construed as 'material to the defense'" and "not unduly oppressive for the producing party").

Defendant urges the court to apply this more relaxed standard. Notwithstanding the Supreme Court's dicta and the two opinions from a court of concurrent jurisdiction, this court declines to break from long-standing precedent in this circuit, which holds that all subpoenas must comply with the *Nixon* standard. *See Ferguson*, 2007 WL 2815068, at *3 (noting that "[a]ll district courts within

this Circuit, including the *Nachamie* court, have applied *Nixon* to assess the validity of 17(c) subpoenas issued to third parties"). Further, "[a]pplication of the *Nachamie* test . . . would eviscerate Rule 17's limitations on criminal discovery, a result for which there is no support in *Nixon*." *See id*. Accordingly, this court will analyze each of the subpoenas for compliance under the *Nixon* standard.

## II. Application

### A. Subpoena 1[2]

By Subpoena 1, defendant seeks trial testimony from Stephen Lesniak, a former United States diplomat in Guyana, who was abducted and then released in April 2003. (Gov't Mem. Ex. 1.) Defendant asserts that he coordinated Lesniak's safe return with various government agencies and their personnel. Defendant contends that Lesniak's testimony is relevant as it will demonstrate "Khan's efforts at combating crime in Guyana impacting [sic] on the United States." (*Id.*) The government contends that any subpoena seeking evidence for this purpose fails the first prong of the *Nixon* test—relevance. According to the government, this evidence is not relevant as it does not make it less probable that defendant, while assisting the government, simultaneously engaged in drug trafficking. (Gov't Mem. at 7-8.) Defendant asserts that this testimony: (i) "does not preclude simultaneous drug trafficking," but "has a tendency to make it less probable," (Def. Mem. 10) (emphasis omitted), and (ii) will show that defendant and David Clarke, a potential government witness, were enemies, as Clarke's faction was responsible for thwarting government efforts to locate and rescue Lesniak (*Id*. at 9-11.).

---

[2] Each exhibit attached to the government's memorandum of law contains a copy of one of the subpoenas at issue and additional background information related to that subpoena. For purposes of clarity, the court will refer to each subpoena by its exhibit number—Subpoena 1 refers to the subpoena contained in Exhibit 1.

4

Evidence is relevant if it has "any tendency to make the existence of any fact . . . more probable or less probable." F.R.E. 401. Defendant's alleged assistance, even if true, does not make it more or less probable that he was not simultaneously engaged in narcotics trafficking. It is not unheard of for an individual assisting the government in some capacity to also engage in illegal conduct. Similarly, it is not uncommon for co-conspirators to disagree and fight over certain issues, while at the same time continue working together to further their mutual criminal goals. The abduction and safe return of Lesniak is not relevant to the issues of this case. The government's motion to quash Subpoena 1 is granted.

**B.      Subpoenas 2-5**

By Subpoenas 2-5, defendant seeks trial testimony from several FBI employees and additional material pertaining to Lesniak's abduction and safe return, including material documenting defendant's contact with the Guyanese government and various United States agencies, recorded communications involving defendant, electronic or otherwise, and government reports, emails, and communications discussing contact with defendant. (Gov't Mem. Exs. 2-5.) Defendant asserts that this evidence is relevant as his cooperation will demonstrate his "efforts at combating crime in Guyana impacting [sic] on the United States." (*Id*.) As set forth above, the purpose for which this evidence is sought is irrelevant to a determination of the issues of this case.

The material requested regarding communications with defendant presents additional problems. Defendants are not entitled to the pre-trial production and inspection of internal agency reports and communications under Rule 17. The production of such material is governed by Rules 16(a)(2), and 26.2, and the Jencks Act, 18 U.S.C. § 3500. Courts have consistently held that defendants may not circumvent these procedures through Rule 17 subpoenas. Defendants cannot

5

obtain law enforcement reports, files, or witness statements under Rule 17. Rule 16 expressly prohibits such disclosures. *See* Rule 16(a)(2) ("[T]his rule does not authorize the discovery of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting this case."). Moreover, it is likely that many of the communications between defendant and the Guyanese and United States governments and their agencies are hearsay. Thus, not only are the communications irrelevant, they likely are inadmissible. Accordingly, the government's motion to quash Subpoenas 2-5 is granted.

### C. Subpoenas 6-8 and 18

By Subpoenas 6-8 and 18, defendant sought trial testimony related to a March 6, 2006 meeting between defendant and various federal agents ("March 6 Meeting"), and related to his arrest in Trinidad in June 2006. (Gov't Mem. Exs. 6-8, 18.) Additionally, defendant seeks from several agencies, evidence of any internal communications regarding the March 6 Meeting. (*Id*.) Defendant asserts that evidence of the March 6 Meeting is relevant as it demonstrates "Khan's efforts at combating crime in Guyana impacting [sic] on the United States," (*id*.), and statements he made at the meeting implicating Clarke demonstrate that he and Clarke were not co-conspirators. (Def. Opp. at 14.) As set forth above, the purposes for which this evidence is sought are irrelevant to the issues of this case. Moreover, it is questionable whether this evidence, if produced, would demonstrate the proffered reason for its relevance—defendant's efforts to combat crime impacting the United States. Defendant requested and attended the March 6 Meeting to clear his name, as the United States had classified him as a "known drug trafficker" in Guyana. (Gov't Mem. at 14.) There is a distinction between clearing one's name and assisting the United States in its anti-drug trafficking efforts.

Subpoenas 6, 8 and 18 are quashed in their entirety. Subpoena 7 is quashed to the extent it seeks material related to the March 6 Meeting.

   D.   **Subpoena 7**

Additionally, by Subpoena 7, defendant seeks from the State Department any material related to the residency status of individuals defendant anticipates will testify as cooperating witnesses for the government, including whether those individuals are in the United States under "S" Visas or as permanent residents. (Gov't Mem. Ex. 7.) Defendant claims that this material bears on the "credibility" of these individuals. *Id*. Impeachment evidence fails the relevance requirement of *Nixon*. "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. At this time, it is not known to the court or the defendant whether these individuals will testify at trial. It is also unknown at this time whether the residency status of these individuals was affected by their alleged cooperation with the government. Such material "ripen[s] into evidentiary material for purposes of impeachment only if and when the witness testifies at trial . . . ." *United States v. James*, 02-CV-778 (SJ), 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (denying motion to quash subpoenas seeking impeachment material, but prohibiting the pre-trial production to defendant). Accordingly, the court hereby modifies Subpoena 7 to request production by the State Department of the residency status of the named individuals to the government. However, pre-trial inspection by defendant is precluded. This information will be made available to the defendant, if appropriate, at the conclusion of each witness's direct testimony. This procedure is consistent with the spirit of Rule 16, yet at the same time prevents undue trial delay. All other information requested in Subpoena 7 is quashed.

### E. Subpoena 9

By Subpoena 9, defendant seeks the testimony of FBI Agent Justin Krider and material in his possession related to an investigation he conducted into the sale of electronic surveillance equipment to defendant by Spy Shop, a company located in Fort Lauderdale, Florida. (Gov't Mem. Ex. 9.) Defendant contends that Krider's investigation is relevant, as it might reveal that he purchased that equipment to assist the Guyanese government in fighting crime and corruption—a legal purpose. (*Id*.) Evidence of defendant's purpose for purchasing the equipment is irrelevant as he is not charged with any wiretap-related crimes. Moreover, the government asserts that the requested material "would primarily consist of witness statements and law enforcement reports." (Gov't Mem. at 16-17.) As set forth above, defendant cannot obtain witness statements or law enforcement reports or files under Rule 17. Accordingly, Subpoena 9 is quashed.

### F. Subpoenas 10-12

By Subpoenas 10-12, defendant seeks testimony from three employees of the Department of Homeland Security ("DHS") as well as any materials in their possession related to two other criminal investigations, *United States v. Wallenstein*, 04-CR-10234, (Gov't Mem. Exs. 10-11), and *United States v. Vishnu Budhan-Persaud*, 06-CR-148, (Gov't Mem. Ex. 12). Defendant contends that the testimony of these individuals and admission of the requested records is relevant to determine whether additional individuals of Guyanese descent were involved with drug trafficking in the United States. (Gov't Mem. Ex. 10-12.) Whether additional Guyanese nationals imported drugs into the United States is irrelevant to whether defendant engaged in such behavior. Moreover, defendant cannot obtain witness statements, or law enforcement files or reports under Rule 17. Further, to the extent that defendant seeks evidence from the government in support of his mistaken identity

8

defense—that "shortman," his alleged alias, was a common nick-name in Guyana—the court previously ruled that the government was under no obligation to produce evidence on this issue. *See* January 16, 2007 Status Conference Transcript. Subpoenas 10-12 are quashed.

### G. Subpoena 13

By Subpoena 13, defendant seeks material from the Drug Enforcement Administration. Specifically, defendant seeks country reports for Guyana and Venezuela for the period 2001 to 2006 and reports of searches conducted in the Narcotics and Dangerous Drug Information System ("NADDIS") for defendant's alleged aliases—Shortman, Bossman, and Roger—for the period 2001 to 2006. (Gov't Mem. Ex. 13.) As set forth above, defendant is not entitled to law enforcement reports and files. Subpoena 13 is quashed.

### H. Subpoenas 14 and 17

By Subpoena 14, defendant seeks records from the United States Marshals Service related to the transport of eight incarcerated individuals to and from the United States Attorney's Office and any meetings they had with agents of the DHS. (Gov't Mem. Ex. 14.) Defendant contends that these records are relevant to demonstrate whether these individuals ever had "the opportunity for collusion and discussions regarding information provided during cooperation." (*Id*.) By Subpoena 17, defendant seeks from the Federal Bureau of Prisons ("BOP") a list of all inmates housed in the same cell unit as five individuals the defendant anticipates will testify as cooperating witnesses for the government. (Gov't Mem. Ex. 17.) The defendant asserts that this evidence is relevant for the same reasons. (*Id*.) This evidence is relevant only to the extent it can be used to impeach the trial testimony of those witnesses. As set forth above, this evidence is not relevant until and unless those witnesses testify at trial against defendant.

9

The government seeks to quash Subpoena 17 on an additional ground—that it would be unduly burdensome for the BOP to create the requested inmate list. The government asserts that: (i) such information is not kept in the ordinary course of business, (ii) the BOP would need to design a specific computer program to create the list, and (iii) this process would likely result in a list of thousands of names. (Gov't Mem. At 21.)

The court hereby requests that the United States Marshall provide the information requested in Subpoena 14 to the government. Pre-trial inspection by defendant is precluded. Defendant will be permitted to review this information, if appropriate, after each witness's direct testimony. As to Subpoena 17, the government's motion to quash is granted to the extent that only the cell locations for each of the five individuals will be provided to the government. Pre-trial inspection by defendant is precluded. Defendant will be permitted to review this information, if appropriate, after each witness's direct testimony.

### I. Subpoena 15

By Subpoena 15, defendant seeks from the United States Immigration and Customs Enforcement ("ICE") all regulations and policy statements related to the preservation of evidence. Defendant contends that the destruction and lack of physical evidence as to the quantity of drugs he allegedly trafficked is relevant. (Gov't Mem. Ex. 15.) This evidence is relevant only to the extent it can be used to impeach the trial testimony of government witnesses. As set forth above, this evidence is not relevant until and unless those witnesses testify at trial against defendant. The court hereby modifies Subpoena 15 to request this information be provided to the government. Pre-trial inspection by defendant is precluded. Defendant will be permitted to review this information, if appropriate, after each witness testifies.

### J. Non-party Subpoenas

Defendant issued subpoenas to several non-governmental, non-party entities. By Subpoena 16, defendant seeks from Knightbridge Mortgage Bankers ("Knightbridge") any employment applications they may have on file for an individual defendant anticipates the government will call as a cooperating witness at trial. (Gov't Mem. Ex. 16.) The government's reply brief includes a subpoena issued to New York Eye and Ear Infirmary ("Infirmary") for medical records for this same individual. (Gov't Reply at 9.) Further, after this motion was fully briefed, the court received a response from a subpoena issued to Jamaica Hospital for billing records for treatment received by this individual.

As a preliminary matter, defendant challenges the government's standing to move on behalf of these non-parties. Knightbridge and the Infirmary asked that the government move to quash the subpoenas on their behalf. The government contends this request provides standing. The government suggests additional theories for its standing with respect to non-parties. Regardless of the government's standing, the court has a duty to ensure that subpoenas are issued only for proper purposes and that they are in compliance with Rule 17. *See United States v. Weissman*, 01-CR-529 (BSJ), 2002 WL 31875410, at *1 n.1 (S.D.N.Y. Dec. 26, 2002). The court, on its own, will review these non-party subpoenas to determine whether they are proper.

This evidence is relevant only to the extent it can be used to impeach the trial testimony of that witness. As set forth above, this evidence is not relevant until and unless that witness testifies at trial against defendant. The court hereby modifies the Knightbridge (Subpeona 16), Infirmary, and Jamaica Hospital subpoenas to request that this information be provided to the government; however, pre-trial inspection by defendant is precluded. Defendant will be permitted to review this

information, if appropriate, after the witness's direct testimony.

## CONCLUSION

For the reasons set forth above, the government's motion to quash is granted in part and denied in part. The parties subject to subpoenas discussed herein are to comply with this Order.

SO ORDERED

DATED:    Brooklyn, New York
          January 20, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge