1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - X

4    UNITED STATES OF AMERICA,  :
                                              06-CR-00255
5                                             08-CR-640
                                              09-CR-150
6
            -against-              United States Courthouse
7
                                  :   Brooklyn, New York
8
     SHAHEED KHAN,
9
              Defendant.
10                                :   October 16, 2009
                                      Two o'clock p.m.
11   - - - - - - - - - - - - - - X

12    TRANSCRIPT OF SENTENCING
      BEFORE THE HONORABLE DORA L. IRIZARRY
13    UNITED STATES DISTRICT JUDGE

14    ATTORNEYS FOR GOVERNMENT:
      BENTON CAMPBELL
15    United States Attorney
      BY:  SHANNON JONES
16         JAMES LOONAM
           WALTER NORKIN
17         MORRIS FODEMAN
      Assistant United States Attorneys
18    271 Cadman Plaza East
      Brooklyn, New York 11201
19
      ATTORNEY FOR DEFENDANT:
20    DIARMUID WHITE, ESQ.
      JOHN BERGENDAHL, ESQ.
21
      STEVEN BROUNSTEIN, ESQ.
22
      Probation Officer:
23    Jaime Turton

24    Court Reporter:
      Marsha Diamond
25    225 Cadman Plaza East
      Brooklyn, New York

```
1    TEL: (718) 613-2489
     FAX: (718) 613-2369
2
         Proceedings recorded by mechanical stenography,
3    transcript produced by CAT.

4              THE CLERK: Criminal cause for sentencing:  United

5    States versus Shaheed Khan.

6              THE COURT: You may call the case.

7              THE CLERK:  Criminal cause for sentencing.  Docket

8    No. 06-CR-255, 08-CR-640, and 09-CR-150:  United States versus

9    Shaheed Khan.

10             Counsel, please state your appearances.

11             MS. JONES; Shannon Johns, Moe Fodeman,

12   Walter Norkin, for the United States. Good afternoon.

13             THE COURT:  Good afternoon.

14             MR. WHITE:  Diarmuid White, John Bergendahl,

15   Steven Brounstein and Brendan White for Mr. Khan.

16             THE COURT: Good afternoon. Good afternoon, Mr. Chan.

17             THE DEFENDANT:  Good afternoon.

18             THE COURT:  We also have from probation a

19   representative.

20             PROBATION OFFICER TURTON: Jaime Turton.  Good

21   afternoon, Your Honor.

22             THE COURT:  Good afternoon to all of our visitors in

23   the audience today.

24             This matter is on for sentencing.  On March 16th of

25   this year Mr. Khan entered pleas of guilty under 06-CR-255 to
```

1    Count Two of the indictment filed in that case, conspiracy to

2    import cocaine and on Docket No. 08-CR-640 he pled guilty

3    under Count One to conspiracy to obstruct justice, and on

4    09-CR-150, which was a matter transferred to this court from

5    the District Court of Vermont, he pled guilty to a single

6    count indictment to a charge under 18 United States Code

7    Section 922(g)(1), felon in possession of a weapon.

8            Mr. Khan, before I actually proceed to the

9    imposition of sentence I want to advise you, and of course,

10   counsel, as to the procedure that I like to follow with

11   respect to sentencing because, indeed, sentencing is a

12   process.  It's not just one step and it's done. And the first

13   thing that I'd like to do is make sure that I've received

14   everything that the parties believe I should have received

15   relative to sentencing. By doing that, too, it alerts the

16   parties to whether or not, perhaps, there's something out

17   there that I should not have -- that I should have, rather,

18   considered.

19           Next we will -- this is a plea of guilty that was

20   entered under Federal Rule of Criminal Procedure 11(c)(1)C.

21   Nevertheless, for sake of completeness of the record, I will

22   set forth the sentencing guidelines calculation that has been

23   set forth in the presentence report. I believe all the parties

24   were in agreement with respect to that and will address that;

25   and then, of course, there are 3553(a) factors that can be

1   discussed. I will give the attorneys an opportunity to make a

2   statement, both for the government and on your behalf,

3   Mr. Khan, since we are covering three different cases.  Not

4   all of the attorneys are assigned to each case, so I will let

5   them individually address the particular case to which they

6   are assigned. Before I actually impose sentence, you also have

7   a right to make a statement to the Court.

8           You follow, Mr. Khan?

9           THE DEFENDANT: Yes, Your Honor.

10          THE COURT:  I did receive the presentence report

11   that was the disclosed on July 28th, 2009. In addition, there

12   was a recommendation that was submitted along with that by

13   probation with respect to sentencing. Although, that should

14   have automatically been disclosed to counsel I was advised by

15   my deputy that apparently it had not been, so my chambers

16   staff took care of sending copies to all of the attorneys on

17   the case. Did everyone, in fact, receive that?  You have, the

18   government?

19          MS. JONES:  Yes.

20          THE COURT:  Mr. Fodeman?

21          MR. FODEMAN:  Yes.

22          THE COURT: Mr. White?

23          MR. WHITE: Yes, Your Honor.

24          THE COURT: Mr. Brounstein?

25          MR. BROUNSTEIN: Yes, Your Honor.

1          THE COURT: Thank you.

2          There was an August 5th letter from Mr. White on

3     behalf of Mr. Khan indicating that the presentence report had

4     been reviewed by him and there were no objections to it -- to

5     what was contained in there.

6          There was an August 17th letter of 2009 from

7     Ms. Jones as to Dockets 06-CR-255 and 09-CR-150, that there

8     were no objections by the government to the presentence report

9     and also, indicating that the obstruction count on the

10    defendant would be discussed separately by the government

11    attorneys handling that matter.

12         I don't believe that I received anything separately,

13    Mr. Fodeman, from the government.

14         MR. FODEMAN: That's right, Judge.

15         THE COURT: On that charge which is under 08-CR-640.

16         MR. FODEMAN:  That's correct.

17         THE COURT:  Just for the record, do you have any

18    objections from your perspective of the case?

19         MR. FODEMAN:  No, Judge.

20         THE COURT:  The Court also received a letter from

21    the public -- from a Ms. Sheila Widell (ph) dated August 21,

22    2009, which the Court had docketed, and copies of which were

23    provided to counsel.

24         Did the parties all receive that.

25         MS. JONES:  Yes, Your Honor.

1              MR. WHITE: Yes, Your Honor.

2              MR. BROUNSTEIN:  Yes, Your Honor.

3              MR. BERGENDAHL: Yes, Your Honor.

4              THE COURT:  The Court received a letter as well from

5     the government dated September 21, 2009 indicating an error in

6     the probation report -- noting an error in paragraph 100 which

7     incorrectly stated that the maximum sentence for the

8     obstruction count was ten years when, in fact, under the

9     relevant statute it was 20 years and also, attached to that

10    were some exhibits indicating the legislation provided for

11    that.

12             September 29th letter from the government setting

13    forth its reasons why the Court should abide by 11(c)(1)(C)

14    agreement that was entered into by the parties and which the

15    Court accepted on the date that Mr. Khan entered his plea of

16    guilty, and as I note for the record, that under Rule

17    11(c)(1)(C) the government, in fact, is obligated to provide

18    such a letter.

19             The Court received a letter dated October 1, 2009,

20    on behalf of Mr. Khan from Mr. White and Mr. Bergdahl with

21    respect to the sentencing indicating that the defense counsel

22    also relied on the government's letter of September 29th

23    stating the reasons justifying the agreed upon sentence and

24    asking the Court to accept a plea agreement and stating that

25    Mr. Khan relies on the reasons set forth by the government and

1    asking the Court to accept the plea agreement.

2            There was an addendum to the presentence report

3    dated October 8th addressing the government's letter of

4    September 21 correcting the error in paragraph 100 that I just

5    mentioned, and so, the presentence report is amended to

6    reflect that change pursuant to the addendum. No further

7    amendment will be necessary for the presentence report.

8            The Court also received a letter from the government

9    dated October 13th of 2009 -- withdrawn.

10           Before we get there, there was a second addendum

11   that was provided by probation dated October 8th of 2009

12   addressing the government's letter of September 29th

13   justifying other reasons why the Court should abide by the

14   agreement -- the plea agreement in this case.  Probation notes

15   that in its view that a sentence of 25 years of custody is

16   recommended, but not greater than necessary to comply with the

17   purposes of Title 18 section 3553(a). Along with that was

18   submitted a revised probation recommendation as to sentence.

19           Did everyone one get a copy of that?  It indicated

20   that it had been disclosed.  Did the government get that?

21           MR. FODEMAN:  Yes.

22           MS. JONES:   Yes, Your Honor.

23           MR. WHITE:  Yes, Your Honor.

24           MR. BROUNSTEIN:   Yes, Your Honor.

25           THE COURT:  Finally, the Court has received a letter

1    dated October 13th from the government setting forth its

2    disagreement with the sentencing recommendation set forth in

3    probation's second addendum.

4              The Court also received a couple of other letters

5    from the general public -- one from a Mr. Harry Rampersaud

6    (ph) that was dated October 9th, and I believe that my staff

7    provided copies to all counsel of that letter; am I correct,

8    everyone has a copy?

9              MS. JONES:   Yes, Your Honor.

10             MR. WHITE:   Yes, Your Honor.

11             THE COURT:   There was a letter that the Court

12   received by fax yesterday. It's anonymous.  It is not signed,

13   and I believe this one has been docketed and copies provided

14   to the counsel.  Did they see receive the copies -- the two

15   page letter?  Everyone received a copy?

16             MS. JONES:  Yes, Your Honor.

17             MR. WHITE:  Yes, Your Honor.

18             THE COURT:  We can address these letters from the

19   public as we move further along. Do the parties agree that I

20   have, in fact, received everything that I should have with

21   respect to sentencing?

22             MS. JONES:   Yes, I believe so Your, Honor.

23             THE COURT: Mr. Fodeman?

24             MR.  FODEMAN:  Yes Judge.

25             THE COURT: From the defense?

1          MR. WHITE:  Yes, Your Honor.

2          MR. BROUNSTEIN:  Yes, Your Honor.

3          THE COURT:  Okay. In the normal sentencing procedure

4    where it is not a plea agreement that's been entered into by

5    the defendant with the government and accepted by the Court

6    under Rule 11(c)(1)(C), which is by far the majority of the

7    plea agreements that are entered into in this district and

8    probably in most other courts -- federal courts around the

9    country -- as a normal course in the more common situation the

10   Court would be required under the law, even post Booker, as a

11   first step to consider sentencing guidelines and to engage in

12   a calculation of what the appropriate sentencing guidelines

13   are.

14          That's the first step, and the Supreme Court has

15   spoken on that topic, and so has the Circuit, and even though

16   they are advisory the Court still has to do that.

17          Within that, it is also understood that the Court

18   has to consider any appropriate departures either upward or

19   downwardly with respect to the guidelines.

20          However, the Court is in agreement with the position

21   that's been taken by the government in its submission of

22   September 29th and which, as I understand it, has been adopted

23   by the defense in this case, that a sentence imposed pursuant

24   to a court's acceptance of the plea agreement under rule

25   11(c)(1)(C) by law is imposed pursuant to the agreement

1    itself, and not pursuant to the sentencing guidelines even

2    though the Circuit has said as recently as August 27th of 2009

3    in citing United States versus Ming cited at 579 F. 3d 200

4    that the Court can and should consult the guidelines in

5    deciding whether to accept the plea -- not in imposing

6    sentence, but in whether to accept the plea, and in fact, once

7    a court has decided to accept the plea the court cannot then

8    later on deviate from the specific sentence or sentencing

9    range that is recommended or requested by the accepted plea

10   agreement and this has fairly much been the law in the Circuit

11   now for close to two decades at the minimum and certainly,

12   many other circuits are -- most of the other circuits are in

13   agreement.

14           The presentence report indicates that the total

15   offense level here is 44 and there's a criminal history

16   category of two which with respect to the count in the

17   narcotics case provides a range of life -- a sentence of life.

18   There is, of course, a cap of the maximums that are set by

19   statute with respect to the other two charges.

20           Before I give an opportunity to the parties to speak

21   what I want to say is that before accepting the plea in this

22   case, recollection serves me, and the parties can correct me

23   if I'm wrong, please feel free, I had specifically requested

24   that the government provide me with the basis as to why they

25   thought this agreement was appropriate and in fact, they did

1    provide that information to the Court.

2              The Court having presided over the earliest docket

3    and in fact, it was a case that was trial ready and having

4    presided over many, many motions dealing with what kind of

5    proof should be introduced at trial -- availability of

6    witnesses, what the witness would say and all other forms of

7    evidence that were available, both from the prosecutors and

8    from the defense point of view -- the Court was certainly

9    aware that if convicted on the primary charges in the

10   narcotics case, that the likely range would have been life,

11   and so, I was certainly aware that that was a possibility at

12   the time that the plea was accepted, and the government, as I

13   said, provided justification for the Court's acceptance of

14   that plea at that time, and it was my understanding that the

15   defense joined in the rationale that was set forth by the

16   government.

17             I'll talk about that a little bit more in just a

18   little bit, but one thing I did want to ask and I neglected to

19   ask you, Mr. Khan, forgive me, is did you have an opportunity

20   to review all of these documents that I mentioned?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT: And did you review them with your lawyers

23   -- all of them?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT: Is there anything else that you wanted to

1   raise or challenge or comment on with respect to the

2   presentence report and any of the addenda?

3           THE DEFENDANT:  I just rely on my attorney,

4   Your Honor.

5           THE COURT:  Okay. So having said that, it seems to

6   me that under the appropriate case law, even though we do have

7   a guideline range sentence that will be imposed today, is

8   imposed outside of the guideline system, but before we get

9   there I will give the opportunity to the attorneys to address

10  the Court and then, of course, Mr. Khan, you'll have an

11  opportunity to address the Court as well.

12          Ms. Jones, do you want to start off?

13          MS. JONES:  Your Honor, it's the government's

14  position that the Court should impose the sentence agreed upon

15  by the parties. As set forth in our letter of September 29th,

16  the reasons for that are to both conserve substantial judicial

17  and government resources and to account for the parties'

18  litigation risk.

19          Regarding the resources, had this case proceeded

20  towards trial, the narcotics proceeding would have been

21  lengthy.  Before we actually would have got to trial we would

22  have had foreign depositions, selection of an anonymous jury

23  and weeks of a trial. After that, two additional cases were

24  contemplated. These matters involved, approximately, half a

25  dozen AUSAs from my office, including the privileged team and

1    obstruction team and a similar number of agents from three

2    different agencies.

3            By disposing of this case before trial, the

4    government avoided disclosing the identities of the

5    prospective witnesses or the substance of their testimony and

6    protected information about ongoing investigations.

7            Regarding litigation risk, I think it is very

8    important for people who have expressed disagreement with

9    their sentence to understand that the choice is not between 15

10   years and 25 years, or 15 years and life; the choice is

11   between 15 years and proceeding to trial where there is no

12   guarantee of a conviction.  The government is confident in its

13   evidence, and believed that it could establish the defendant's

14   guilt beyond a reasonable doubt, but in this case because the

15   defendant committed his crimes from Guyana and insulated

16   himself from direct contact with the United States and people

17   in the United States, intermediaries, the strongest evidence

18   in this case was going to come from the government cooperating

19   witnesses. These cooperating witnesses were also involved in

20   narcotics trafficking and many had extensive criminal history.

21   While we believe that the evidence would establish the

22   defendant's guilt, it is always possible that a jury when

23   evaluating the cooperating witnesses would find them to be

24   incredible simply based on their criminal history.

25           Absent a guilty plea in this case, there was no

1    absolute certainty that the defendant would be convicted at

2    trial. Due to that litigation risk, the government decided

3    that a sentence of 15 years was appropriate and reasonable in

4    this case.

5         We did not go into detail but you know, witness by

6    witness discussion of our case and the potential litigation

7    risk, that is not appropriate to expose that to the defendant

8    but for all these reasons, which the probation office was not

9    privy to, nor the people who are evaluating this case on the

10   outside, the government would ask that you impose the sentence

11   that we have agreed upon.

12        THE COURT:  Thank you.

13        Mr. Fodeman, could you address the perspective of

14   the government from the case that you had handled since, for

15   sake of completeness of the record, because of the sensitive

16   issues in that case involving obstruction of justice charges

17   -- not only against Mr. Khan, but also, against his prior

18   attorneys in this case Robert Simels, and Adrienne Irving.

19   There were a number of rather complex attorney-client

20   privilege issues and perhaps, you can address that as it

21   relates to the sentencing.

22        MR. FODEMAN:  Absolutely, Judge.

23        You've certainly identified the issue that

24   confronted all of us prosecuting that case. The challenging

25   issue -- one of the most challenging issues associated with

1    that case was that because we were prosecuting not only

2    Mr. Khan but also, his attorneys, there existed a great deal

3    of potential evidence which was subject to the attorney-client

4    privilege.

5           When I say "substantial" I mean boxes upon boxes of

6    documents that were generated for this litigation and

7    Mr. Khan, Mr. Simels and Ms. Irving's representation of

8    Mr. Khan.  As part of this agreement Mr. Khan agreed to waive

9    the attorney-client privilege which immediately gave us -- by

10   "us" I mean the attorneys prosecuting Mr. Simels and

11   Ms. Irving -- immediate access to those documents and

12   alleviated the need to continue with what we had in place,

13   which was a very laborious process of document, document

14   review by separate set of attorneys to determine whether or

15   not that privilege existed.

16          I can say with relative certainty that not only

17   would it have been extremely difficult to proceed to trial in

18   the timeline that we did, but it may have been next to

19   impossible and as a result that trial, which itself was

20   lengthy and complex, would have I think been delayed had this

21   privilege waiver not been obtained.  So, for those reasons,

22   from our perspective, this is a reasonable sentence and a

23   reasonable outcome.

24          THE COURT: It is my understanding because, while

25   initially that case was assigned to me on motion by the

1   defense the case was -- I recused myself and had the case

2   reassigned to -- the case was reassigned randomly, I should

3   say, to Judge Gleeson.

4           My understanding in following the case, because

5   there had to be a certain amount of coordination between Judge

6   Gleeson and myself in terms of -- because Mr. Khan was common

7   to both cases, and in terms of trying to schedule a trial in

8   the narcotics case, which I still had which was just about

9   ready to go, there were a lot of scheduling issues that had to

10  be addressed, and my understanding was that there would have

11  been two separate trials in that case; am I correct?

12          MR. FODEMAN:  I think that was certainly the

13  likelihood.  There was a severance motion made.  It was

14  rendered moot.  That was certainly in the offering. The other

15  thing to keep in mind with respect to that case is that there

16  was certainly an eagerness on the part of the defendants in

17  that case, both of whom were practicing attorneys, whose

18  practice was obviously put on hold during the pendency of that

19  case to get to trial, and the waiver here, and the plea here

20  certainly opened up the possibility to proceed to trial when

21  we did and in mid summer.  So for that reason as well, all

22  those scheduling issues, this was an important development in

23  that prosecution.

24          THE COURT:  Thank you. Mr. White.

25          MR. WHITE:  Your Honor, Mr. Khan --

1           THE COURT:  Can you pull the microphone closer.

2           MR. WHITE:  Sure. Mr. Khan adopts the arguments you

3    just heard from Ms. Jones and Mr. Fodeman.  I agree that a

4    sentence of 15 years is appropriate and reasonable. It is also

5    long.  Fifteen years is a long sentence, Your Honor, by any

6    standard, and I believe it is sufficient to serve the purpose

7    of 18 USC 3553(a).

8           THE COURT:  Thank you.

9           Mr. Bergendahl, is there anything that you would

10   like to add?

11          MR. BERGENDAHL:  No, Judge.  My position is

12   consistent with that espoused by the government and Mr. White.

13          THE COURT:  Thank you.

14          Mr. Brounstein.

15          MR. BROUNSTEIN:  Nothing further.  I can only just

16   corroborate with the government that I was part of that

17   process, that very, very laborious process in reviewing

18   documents and if we had to continue I spent a couple of

19   hundred hours just doing it and I probably didn't even scratch

20   the surface. So I think the Court should consider that.

21          THE COURT:  Mr. Khan, you have a right to make a

22   statement to the Court before I impose sentence.

23          THE DEFENDANT:  Yes, Your Honor. I just want to say

24   that --

25          THE COURT: I am sorry.  Can you pull the microphone

1  closer because it is very difficult to hear you.  Is the light

2  on?

3           MR. WHITE:  Yes.

4           THE DEFENDANT:  I just want to say that I am deeply

5  regretful for my actions I have caused the citizens of the

6  United States, and also, I want to apologize for the pain and

7  hurt my actions have caused my family.  I want to thank them

8  for their continued support and I want to thank all my

9  attorneys, especially Mr. Bergendahl and Mr. White who have

10 stood by me in the most darkest days of my life.  They amplify

11 what it means to be men of integrity and honesty with me, and

12 the United States should be proud of these two men in the

13 courtroom today.  I really mean that from the depth of my,

14 heart myself, and my family and my children, I owe these men a

15 debt of gratitude beyond comprehension.

16          Thank you, Your Honor.

17          THE COURT:  Thank you.

18          I want to address -- certainly, if the parties want

19 to as well, I will give you leave to do that, but because in

20 some ways the letters that have been sent to the Court from

21 the public statements, from people, believe that they have

22 been impacted by the actions of Mr. Khan in Guyana, and here I

23 think it is only appropriate not only to acknowledge them but

24 to address the concerns that they raise.

25          As I mentioned earlier, we have three letters and

1   the first letter of August 21, 2009 -- this one is not overly

2   long.  They are all part of the record.  They are not overly

3   long.  There is one that is two pages long.

4           The August 21 letter says:  It is with sadness and

5   emotions that I write to you today concerning the sentencing

6   of Mr. Shaheed Roger Khan. I was recently informed that

7   Mr. Roger Khan was given a plea deal that would have him serve

8   only 15 years in prison for his numerous drug crimes and

9   atrocities. This bit of information is very upsetting and

10  discomforting to me. I'm a decent law-abiding American citizen

11  of Guyanese parenthood. One of my relatives suffered a cruel

12  and vicious death at the hands of Mr. Khan and his drug goons

13  a few years ago for which Mr. Khan never faced justice.

14  Mr. Khan was a vicious and ruthless drug lord in the country

15  of Guyana. During the last seven years he operated with

16  immunity from the law because he was able to pay off

17  government officials, so that they may look the other way.

18          Conservative estimates show that Mr. Khan was

19  responsible for over 200 deaths in that small country. Ever

20  since his incarceration here in the United States, citizens of

21  Guyana are able to live a more peaceful and normal life.

22          It is my fervent and passionate hope, and may I

23  implore you to please reject that plea agreement and let

24  Mr. Khan answer to the full court of law.

25          The gains from his drug exportation to this country

1    facilitated a lot of grief and devastation to many families in

2    Guyana. No one in Guyana wants to see him resume his

3    despicable and ignominious activities in the next 15 years.

4            I thank you in anticipation and it is signed.

5            With respect to the October 9th letter it reads:

6    Your Honor, good day. I do hope that this letter reaches you

7    in the best of health and happiness.

8            I find it very compelling to write to you concerning

9    the imminent sentencing of Mr. Roger Shakheed Khan. As a

10   Guyanese born American citizen I was flabbergasted to learn

11   from the United States Attorney's Office that Mr. Khan will be

12   receiving a sentence of only 15 years imprisonment having

13   pleaded guilty to the numerous charges that he once faced.

14           It is certainly inconceivable to me that this

15   vicious and abominable perpetrator of crimes against humanity

16   will be granted such a lenient sentence.

17           Understandably, the hundreds of murders that

18   Mr. Khan was responsible for were committed in another

19   country. However, they were done in order to facilitate his

20   drug empire which was responsible for the importation of large

21   quantities of cocaine into the United States, the charges for

22   which he faced a life sentence if found guilty.

23           Mr. Khan also faced another life sentence for

24   witness tampering charges here in the USA. Let me just say

25   that that, in fact, is not true as I mentioned earlier. The

1    maximum sentence that the Court would have been able to impose

2    under the law is 20 years, a charge in which it was disclosed

3    that he was willing to kill innocent persons if they were

4    willing to testify against him, a charge in which his attorney

5    and accomplice Mr. Robert Simels was found guilty and now

6    faces a life sentence.

7              Then there was still the gun running charge of

8    several years ago in the State of Vermont for which he had

9    been a fugitive.

10             In my humble opinion I think I speak for so many

11   when I say that Mr. Roger Shaheed Khan amore fitting a tougher

12   punishment for all of his atrocities.  Over the last several

13   years his drug empire has caused a lot of grief, pain and

14   sadness for many families for which he has never been held

15   accountable.

16             Your Honor, I beg you on October 16th you give that

17   animal what he appropriately deserves and send the right

18   message to the other drug lords in the name of justice and it

19   is signed.

20             With respect to the other letter, it is a bit longer

21   but again, it goes in the same vein.  It comes -- as I said,

22   this was an anonymous letter from a concerned and law abiding

23   citizen of Guyana who also felt it to be his or her duty to

24   write a letter on behalf of family, friends and other

25   concerned citizens of this country to express their views

1    about the sentencing of Mr. Khan.

2              I'm not going to read through the whole thing. It,

3    in essence, repeats what has already been said in the other

4    two letters we just got in chambers. It will be docketed and

5    made part of the public record in keeping with the Court's

6    policy that all proceeding in criminal cases should be public

7    proceedings.

8              I want to address myself first to those letters and

9    I don't know if there are people in the audience here today

10   who share those same sentiments.

11             One of the sources of pride I think the United

12   States and its citizens and one of the reasons why the United

13   States in some ways -- not all ways but in some ways -- is

14   admired is because it is a country that is based on the rule

15   of law and the rule of law that applies to all equally. Equal

16   justice under the law to all, without favor to anyone because

17   of their national origin, because of their sex, because of

18   their class, whether they are poor, whether they are rich, the

19   law applies the same to me as it does to the person who cleans

20   the floor in this courthouse.

21             Nothing that we do today would ever be able to

22   address or redress whatever suffering may have happened in

23   Guyana, and in fact, as part of the motion practice that we

24   had here, there was evidence that under the law I felt very

25   strongly the government would not be able to use and introduce

1    in evidence because of the fact it occurred in Guyana. So to

2    the extent that certain acts occurred in Guyana, however

3    heinous they may be, a great deal of that evidence the

4    government would not have been able to use in the case here by

5    operation of law and not for the lack of trying, but that's

6    the way the law works.

7            To a certain degree that's what Ms. Jones refers to

8    by Mr. Khan having insulated himself by operating from -- his

9    drug operation from Guyana, but that also points to the other

10   reasons why the government extended the offer that it did to

11   the defense, and the reasons why the Court felt it appropriate

12   to accept the plea agreement here.

13           While we are a country of laws, we have a

14   constitution that is the oldest in the world.  That is living,

15   breathing.  Is still in use for over 200 years. It's a

16   Constitution that many countries are emulating and many

17   countries that are trying to establish a democratic form of

18   government have in great part adopted for their own citizens,

19   and by virtue of the rights that everyone in this country has

20   under that Constitution, every person accused of a crime is

21   entitled to a trial by jury.

22           As Ms. Jones correctly said, in the narcotics case

23   and I believe also in the obstruction of justice case --

24   Mr. Fodeman is free to correct me if I'm wrong, Mr. Brounstein

25   as well -- the primary evidence was going to come in through

1    cooperating witnesses. These were accomplices of Mr. Khan's in

2    the drug business. I've done many trials in state court and in

3    federal court. It is like tossing dice when you rely on those

4    kinds of witnesses and why?  For the very reasons that

5    Ms. Jones said: A jury has to assess the credibility.  One of

6    the factors that they may take into account in assessing the

7    credibility of the witnesses is whether the witness has a

8    criminal record, whether that witness is cooperating in

9    exchange for a lighter sentence.  Many of these people were

10   indicted themselves and charged with the very same crimes and

11   facing the very same range of sentence that Mr. Khan was

12   facing.

13           And I have seen cases in this very courthouse, and I

14   think all the lawyers here can say the same thing, where

15   everyone was certain based on the testimony that came through

16   the cooperators, even if it was on tape, where juries have

17   come back with a verdict of acquittal. So it is never a locked

18   thing.  It is never a guarantee.  And by pleading guilty to

19   this agreement there was certainty of conviction in not only

20   the narcotics case, but also, the obstruction case which

21   involved allegations of tampering with witnesses, but also, in

22   the case that has not been mentioned that much here today, the

23   third case, a 16 year-old case involving firearms. It's

24   difficult enough to try a case that's of recent vintage, but

25   to try a case that is 16 years old, even if most of the

1   testimony comes from law enforcement agents, by now who knows

2   where the evidence is?  By now who knows where the agents are.

3   They may be retired?  Some may not be with us.  Who knows?

4   But certainly there would have been an obligation on the part

5   of the government to proceed on all of those three cases.

6   Those were three separate trials. The other case was

7   transferred from Vermont, so that would have had to have gone

8   all the way back to Vermont.

9          In the narcotics case alone I think we had

10  anticipated an eight week trial and that was, I think, a very

11  conservative estimate in my view, which did not take into

12  account the long process of trying to get deposition testimony

13  in Guyana which, based on the efforts that were made by

14  counsel in this case, apparently was a heretofore unexplored

15  area in Guyana and just to get a court to hear the application

16  -- I think it took over two months.

17          MR. WHITE:  Yes, it did, Your Honor.

18          THE COURT:  So that could have created some

19  substantial delays. Selection of the jury alone was expected

20  to take about a month. That's one case. Then there's the other

21  case that was described by Mr. Fodeman.  I don't think I need

22  to repeat that here and then a third case.

23          But beyond that, one of the reasons that the

24  legislature decided in passing the federal rules, and in

25  particular this rule, is that it is -- the court only gets to

1   see a fraction of what the case is about.  The lawyers who are

2   in the trenches get to see it and the defense doesn't get to

3   see all of that much either, but the government sometimes is

4   in the best position to make an assessment as to what kind of

5   real savings there are, and I don't mean to make light in

6   terms of the word savings, but when we are talking savings we

7   are talking about not just the credibility of confidential

8   informants or accomplices, but perhaps, those who had heard of

9   the witness tampering attempts who might say there was no way

10  I'm testifying now.  You can do to me what you want and that

11  happens.  It absolutely happens.

12          So the prosecution may start off that way thinking

13  I've got ten witnesses lined up, but as the time gets closer

14  they get cold feet. I had one such witness when I was a

15  prosecutor who totally left the jurisdiction never to be found

16  again in the middle will of trial. So those things happen.

17  There's the uncertainty of the jury verdict. There is the

18  expenditure of resources of the government in terms of their

19  attorney time, in terms of the hours.  I can't even begin to

20  express -- Mr. Brounstein said he had barely touched the tip

21  of the iceberg and had spent substantial hours. I'm sure the

22  defense attorneys will say the same.

23          There's the expenditure of court time. There are

24  other cases that, as you heard Ms. Jones mention, there are

25  other investigations that perhaps could continue to move

1    forward using perhaps the same sources of information that

2    they can't use again if they're disclosed.

3            These are all very legitimate reasons and I do not

4    make light of the concerns that those letters raise, but in

5    taking into consideration all of these reasons -- all of the

6    reasons that have been set forth in the papers in this case,

7    reasons that the Court was very much aware of at the time that

8    I accepted the offer or the recommendation, I should say, that

9    was made by the parties, and it was a decision that I entered

10   into with great thought and took time to decide.

11           Mr. White says correctly 15 years in a United States

12   prison is a very substantial sentence. It is quite a lengthy

13   sentence. I don't know given the tenure of the letters that

14   were sent by members of the public that there could be any

15   sentence that could ever make things right, but here I do

16   think that the ends of justice have been served all way around

17   by the certainty of the punishment and that's factored in

18   under 3553 (a) that the Court has to take into consideration

19   -- all of those factors under 3553 (a) the Court took into

20   consideration -- the seriousness of the offense and the

21   history and the nature and characteristics of the defendant

22   and what deterrence factor that it would have.

23           I would venture to say that if you asked anyone

24   would they want to try to import drugs into the United States

25   and face a 15 year sentence that they would likely say no. It

1    is hard to imagine someone who would say yes and so,

2    therefore, we do have some deterrent factor here.

3            So for all of these reasons, the Court imposes the

4    following sentence:

5            As to Count Number Two under 06-CR-255, 15 years of

6    imprisonment, with a term of supervised release of five years.

7            That is additional.  For members of the public

8    that's additional supervision, assuming that Mr. Khan does not

9    get deported.

10           The special condition imposed is no possession of

11   any firearm, ammunition or destructive device, and if deported

12   Mr. Khan may not reenter the United States illegally.

13           I am advising you, Mr. Khan, that if you should be

14   deported, and it would seem fairly certain under the

15   circumstances here, and you do reenter the United States

16   illegally, not only can you be charged with the crime of

17   illegal re-entry, you would most likely receive an enhanced

18   sentence by virtue of your convictions today.

19           If you were to do that within the term of your

20   supervised release you could also face additional jail time

21   for that -- for the violation of supervised release, which

22   could be imposed consecutively to any sentence that you could

23   get for the illegal re-entry.

24           If you should reenter the United States illegally

25   after having finished the term of supervised release or having

1  that terminated you could be still be charged with the illegal

2  re-entry charge with the enhanced sentencing provisions.

3          There is $100 special assessment imposed.

4          One area I would like to hear from counsel on is

5  with respect to a fine. There was some conflicting information

6  in the presentence report with respect to various companies

7  that were or were not owned by the defendant. I don't know if

8  counsel is, perhaps, in a better position to address the issue

9  of a fine.

10          MR. WHITE:  As you know, the presentence report

11  recommended that no fine be imposed because of Mr. Khan's

12  inability to pay. You'll recall, I'm sure, the many months

13  that Mr. Khan attempted to retain counsel when Mr. Simels left

14  the case and was unable to do so.  Specifically for that

15  reason, the lack of resources and I think that corroborates

16  the fact that he is without the ability to pay, Your Honor.

17          THE COURT: No fine is imposed due to the inability

18  to pay.

19          And there are outstanding counts in the superseding

20  indictment and underlying indictments.

21          MS. JONES: Your Honor, the government moves to

22  dismiss Counts One and Three through 18 in the superseding

23  indictment and underlying indictment in the narcotics case.

24          THE COURT:  Those counts are dismissed.

25          As to Count Number One Docket No. 08-CR-640 the

1    Court imposes a term of 15 years of imprisonment with a

2    supervised release of five years, with the same conditions

3    that I previously imposed on Count Number Two.  One Hundred

4    dollar special assessment is imposed.  No fine under that

5    count due to inability to pay.

6             There are open counts Mr. Fodeman, in that

7    indictment?

8             MR. FODEMAN: I don't have it in front of me, Judge.

9    My recollection is that there are additional counts, but I am

10   not sure that any of them are to Mr. Khan, but to the extent

11   that there are, we move to dismiss them.

12            THE COURT:  Any open counts are dismissed as to that

13   docket.

14            And as to Docket Number 09-CR-150 the maximum

15   sentence permitted there, I believe, is ten years.  That is

16   the sentence that is imposed.  Five years of supervised

17   release -- I'm sorry -- three years of supervised release.

18   The same conditions -- special conditions as I imposed with

19   the previous counts:  $100 special assessment is imposed.

20   Therefore a total special assessment of $300.

21            No fine is imposed due to inability to pay.

22            I believe that was a one count.

23            MS. JONES: I believe that is correct, Your Honor.

24            THE COURT: I do believe, also, that Mr. Khan by

25   virtue of the agreement also waived his right to appeal.

1          MR. WHITE:  That is correct.

2          MS. JONES:   That is correct.

3          THE COURT:  And Mr. Brounstein and counsel on the

4    other two cases, Mr. Bergendahl, Mr. White, if you would

5    advise your client please as to any residual rights to appeal

6    that he may have, I would ask counsel to stay on for ten days

7    in the event that he does wish to file a notice of appeal for

8    the purpose of filing that appeal and also, Mr. Khan, if you

9    cannot afford to have counsel on appeal you may ask the Court

10   to appoint counsel for you.

11          Are there any outstanding matters that the parties

12   would like to address?

13          MR. WHITE:  Yes, Your Honor.  Could I ask if the

14   sentence you've imposed on the --

15          THE COURT: Thank you. Thank you, very much.

16          All sentences are to concurrent to one another.

17   Terms of supervised release are also to run concurrent with

18   one another.

19          Anything further?

20          MS. JONES:   Not from the government, Your Honor.

21          THE COURT:  Anything further from the defense?

22          MR. WHITE:  Your Honor, Mr. Khan, while he's been

23   incarcerated in the Metropolitan Correctional Center has been

24   visited regularly by his wife and his mother who live in the

25   Maryland area, and in order to facilitate their visiting when

1    he's designated by the Bureau of Prisons I would ask the that

2    Court recommends that he be designated the mid Atlantic region

3    of the Bureau of Prisons.

4                THE COURT:  That application is granted.  The Court

5    makes that recommendation to the Bureau of Prisons.

6                Mr. Khan, I make that recommendation to the Bureau

7    of Prisons but I want you to understand that ultimately any

8    issues with respect to -- any determinations with respect to

9    housing are made by the Bureau of Prisons as they take into

10   consideration factors that I have no control over, including

11   the availability of space, security and so on.  However, the

12   Court has been advised consistently by the Bureau of Prisons

13   that they do their best to comply with these kinds of

14   recommendations that are made to the Court and so I will make

15   that recommendation.

16               THE DEFENDANT:  Thank you.

17               THE COURT:  Anything further?

18               MR. WHITE:  No, Your Honor.

19               MR. BERGENDAHL: No Judge.

20               THE COURT:  Thank you.

21               Marshals may take charge.

22               MS. JONES:  Thank you.

23               MR. FODEMAN:  Thank you.

24               (Proceedings concluded as above set forth).

25                        oOo

MARSHA DIAMOND, CSR, RPR
OFFICIAL COURT REPORTER